Curia, per

Evans, J.
It is on the application of the plaintiff, and for his benefit, that the body of the defendant is arrested, and held in custody of the sheriff, or the custody of his bail, to satisfy the plaintiff’s judgment when rendered. Being, as it certainly is, a mere security for the plaintiff, I am at a loss to conceive of any reason why he may not waive this advantage by releasing the bail, or by discharging the defendant from the custody of the sheriff. The only supposable objection that has been urged is, that the plaintiff may again arrest him, and thus harass the defendant by discharges and fresh arrests. Prior to the Act of 1821,(b) no bail could be required pending the suit, and the object of that Act was to remedy this defect of the law. Without expressing any definite opinion on the subject, I think it may well be questioned whether a defendant, can be arrested pending a suit, when he had been previously arrested and held to bail by the plaintiff, and by him discharged ; so that it is not likely that the ^supposed evil can ever arise. I see nothing, therefore, either in reason or in the authority of any decided case, which will prevent the plaintiff from discharging the defendant from the custody of the sheriff, as was done in this case ; the effect of which is to restore the defendant to his liberty, and to authorize him to go wheresoever he pleases. If he remains after this, his residence in the jail or the prison rules is entirely voluntary, and of his own free will.
But it is supposed that by the arrest, the defendant has acquired a right to make an assignment of his property under the Act of the Legislature, passed for the relief of insolvent debtors, of which ’the plaintiff cannot deprive him by a discharge against his consent. I am unable to discover from wheuce such right is derived ; if it is found any where, it must be in the Act of 1759,(c) under which the defendant claims to be discharged from the plaintiff’s debt, as well as the debts of all his suing creditors, upon an assignment of his schedule. I think there can be but little doubt that after the discharge, the defendant can no longer be regarded as a prisoner ; his remaining in the jail is of his own accord, and not by any compulsion of the plaintiff. Let us now, by examining the insolvent laws, see whether such a person is entitled to the benefit of its provisiorss. The first clause begins by declaring that any one arrested may, within one month after he, she, or they shall be taken into custody, exhibit a petition, setting out the causes of his, her, or their imprisonment. In another part of the same clause, it is said the Court shall, in a summary way, examine into the matter of the said petition, and shall hear what shall be alleged against the discharge of the said petitioner. The oath to be administered to him is that he has been a prisoner in the common jail, without his consent or procurement. The 12th section provides that no one shall be entitled to the benefit of the Act, unless such person shall have actually remained confined in the common *189 jail, Ac. The 13th section authorizes the justices, in case they suspect the person applying has not rendered in a true account of his estate, to re-commit such person to the common jail, there to remain. The 20th section makes the arresting creditor “liable for, and chargeable with, the fees due to the provost marshal, for the arrest and imprisonment of such person.” In the Act of 17188,(a) we find the persons entitled to the benefit *of that Act, described in the 2d section, as those committed on mesne process; in the 3d section, as prisoners in execution ; in the 4th section, as any person “ confined on mense process.'1 The fifth section extends the benefit of the Act of 1159 to all persons “confined on mense process in any civil action, or on execution These and similar expressions arc to be found in almost every section of the Acts of 1759 and 1788, and show most clearly that nono are entitled to the benefit of these Acts, except prisoners, those who are confined within the jail bounds ; for the prison rules are but the enlargement of the jail. Does the defendant come within the provisions of these Acts ? Can he be regarded as one confined on mesne process, after the plaintiff has discharged him from the arrest? Is not his remaining in the jail, or the jail bounds, after this, entirely voluntary? And if so, can he swear he has been confined without his consent? After his discharge he was at liberty to go wheresoever he pleased. He was no longer a prisoner, or one restrained of his liberty. Upon a careful examination of the provisions of these Acts, I am satisfied a defendant has no other rights under them, than the right to be set at large and freed from imprisonment upon a surrender of his estate; and if he be discharged by the voluntary act of the plaintiff, the object of the law is obtained, and the debtor can ask no more. To authorize him to do what is claimed by the defendant, would be to enable him, by remaining voluntarily in jail, to make an assignment whereby the debt of the plaintiff, and the debts of all suing creditors are extinguished, against the will of his creditors; and more than this, he may subject the plaintiff to the payment of his legal fees, for the Act of 1759, and the Act of 1817, both make the plaintiff chargeable with the expenses of the imprisonment, in the event the assets assigned are not sufficient. These Acts go on the supposition that as the expenses are incurred at the plaintiff’s instance, he ought to pay in the event ihey are not paid by the defendant or out of his assigned estate; but nothing could be more unreasonable than this, where the defendant remains in jail voluntarily and against the will of the plaintiff. Suppose the action should abate, or the plaintiff should discontinue, or be nonsuited, can the defendant still go on and be discharged from an action when none is pending against him ? It was recently decided in a case in Charleston, not yet reported, and I do not remember* the names of the parties, that the defendant was not entitled to the benefit of the Act, where the plaintiff' had discontinued his suit. I do not remember whether, in that case, the discontinuance was before or after the defendant had filed his schedule, and given his notice; but I apprehend that fact is immaterial and cannot vary the result. The oath he is required to take is, that he has been confined from the time of his being arrested, at the suit of -, without his consent or procurement. How can this defendant *190 swear he has been confined from the time of his being arrested, at the suit of the plaintiff, when he had been discharged from his confinement in jail, near two months before? After his discharge, his confinement was voluntary. The object of the insolvent Acts, it seems to me, is to enable the defendant, by a surrender of his property, to discharge himself from imprisonment, if his creditor persists in keeping him in jail; but the end is already obtained, where the creditor voluntarily releases him from confinement. Every clause in the Act shows that at the time the application is made, the applicant must be an imprisoned debtor. The defendant is not in that condition, and, therefore, the motion is granted.
See N. Cohen’s case, Charleston, January, 1859, 11 Rich. An. Sleeper & Fenner vs. N. A. Cohen.
Richardson, O’Neall and Butler, JJ., concurred. Gantt, J., dissented.

 6 Stat. 337, § 3. An.

 4 Stat. 56. An.

 5 Stat. 78. An.